18

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

v.

D-1 KIJUANA EVANS,
D-2 LONNIE GRIFFIN

Defendants.
________________________________/

Case: **2:26-cr-20639**
Assigned To : **Michelson, Laurie J.**
Referral Judge: **Grand, David R.**
Assign. Date : **9/23/2026**
Description: **INDI USA v SEALED MATTER (JP)**

Violations:
18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 1957

# INDICTMENT

The Grand Jury charges:

## GENERAL ALLEGATIONS

1. In Michigan, probate courts appoint conservators and guardians to care for individuals adjudicated as incapacitated persons ("wards") who are unable to manage their personal or financial affairs. These wards are often elderly individuals who cannot physically care for themselves and lack the capacity to arrange for their own care. Frequently, such wards have no family members or other suitable persons available to assist them. In some cases, wards are not elderly but are otherwise mentally or physically incapacitated and similarly unable to provide for their own needs.

2. Oakland County Probate Court (OCPC) appoints guardians for incapacitated wards, pursuant to M.C.L. 750. 5301, *et seq*. Court appointed guardians are required to act in the best interests of their wards. Guardians are responsible for the care, comfort, maintenance, and custody of their wards. Guardians may be responsible for selecting appropriate residences for their ward. Court appointed guardians are required to ensure that their wards receive required medical services.

3. Court appointed guardians are entrusted by the court as fiduciaries to safeguard the wards' assets, including their clothing, furniture, vehicles, personal effects, bank accounts, life insurance policies, retirement/pension accounts, social security income, real estate, and any other assets, income, or property owned by the ward. Court appointed guardians are required by law to use the wards' assets exclusively for the benefit of the ward and to avoid conflicts of interest or decisions that benefit the guardian.

4. Court appointed conservators are likewise fiduciaries required by law to act in the best interests of their wards. A conservator's primary duties are to preserve the ward's assets and to expend them for the support, education, care, and benefit of the ward and any dependents. Unlike guardians, conservators have the authority to make financial decisions for their wards. Conservators have the authority to

take possession, collect, preserve, manage, and dispose of a ward's assets. They may also dispose of a ward's real property, if authorized by the probate court.

5. The duties of a conservator are governed by the Michigan Prudent Investor Rule, MCL 700.1501, *et seq*, which require that a conservator must invest a ward's assets as a prudent investor would. To satisfy this standard, conservators are required to act solely in the interest of the ward and must exercise reasonable care, skill, and caution.

6. When a probate court appoints a guardian or a conservator, it issues Letters of Authority which allow the guardian or conservator to exercise their authority with respect to the ward.

7. Court appointed guardians are required to file annual and final reports with the Probate Court detailing actions taken with respect to the ward. The annual report contains information on where the ward resides, the ward's physical health, the ward's mental health, and the ward's social activities. Guardians are not required to file an accounting of the ward's income, expenses, or assets.

8. Likewise, court appointed conservators are required to file annual and final reports with the Probate Court. The annual report should be an accounting that lists the assets of the ward and the ward's income and expenses for the previous year. Once an annual report is filed with the probate court, the court will issue new Letters of Authority for the conservator, if the conservatorship is to continue.

9. Comerica Bank is a financial services company headquartered in Dallas, Texas, which has branches and offices located in the Eastern District of Michigan.

10. JP Morgan Chase ("Chase") is a financial services company headquartered in New York, New York, which has branches and offices located in the Eastern District of Michigan.

11. Bank of America is a financial services company headquartered in Charlotte, North Carolina, which has branches and offices located in the Eastern District of Michigan.

12. Citizens Bank is a financial services company headquartered in Providence, Rhode Island, which has branches and offices located in the Eastern District of Michigan.

*Defendant Kijuana Evans*

13. Beginning in 2024, KIJUANA EVANS owned and operated Tri-State Guardian Services ("Tri-State"), a guardianship agency in metropolitan Detroit. Tri-State was appointed as fiduciary for incapacitated persons in the Oakland County Probate Court. As court appointed fiduciary, EVANS had access to wards' assets, including bank accounts, social security checks, retirement/pension income, homes, and other personal property. Tri-State was also appointed as conservator for wards. Tri-State operated from an office in Fraser, Michigan.

14. Prior to operating Tri-State, EVANS worked at Guardian & Associates, a guardianship agency in metropolitan Detroit. EVANS assisted in the care of wards and operated a company that was paid for providing services to Guardian & Associates' wards.

15. In January 2024, Guardian & Associates was suspended by OCPC and other probate courts as fiduciaries for wards and were prohibited from continuing to act as fiduciaries. EVANS petitioned OCPC to be successor conservator for Guardian & Associates' wards. Tri-State was appointed as successor conservator by OCPC for several of Guardian & Associates' wards.

16. As court appointed conservator, EVANS was required to file annual accountings with the OCPC.

17. EVANS maintained a depository bank account for Tri-State at Chase Bank and maintained a bank account for Evans Diversified Services at Bank of America. EVANS also maintained depository bank accounts for her incapacitated wards at Citizens Bank and Comerica Bank.

*Defendant Lonnie Griffin*

18. LONNIE GRIFFIN owned and operated Key to Life Transport ("Key to Life"). Key to Life provides non-emergency transportation to wards of Guardian & Associates and Tri-State.

19. GRIFFIN also acted as a manager for Tri-State, helping to provide care to the wards. GRIFFIN was a signatory on Tri-State Chase bank accounts.

20. GRIFFIN maintained depository bank accounts for Key to Life at Chase bank.

**COUNT ONE**
18 U.S.C. § 1349
*Conspiracy to Commit Wire Fraud*

D-1 KIJUANA EVANS
D-2 LONNIE GRIFFIN

21. From at least in or on March 2024, through at least in or around April 2025 in the Southern Division of the Eastern District of Michigan, and elsewhere, the defendants, KIJUANA EVENS and LONNIE GRIFFIN, along with others known and unknown to the Grand Jury, did knowingly and intentionally, combine, conspire, confederate, and agree to commit wire fraud, that is, defendants knowingly, intentionally, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmit and cause to be transmitted, by means of wire, radio, and television communication, writings, signals, pictures, and sounds in interstate and foreign commerce for the purposes of executing such scheme and artifice, in violation of Title 18, U.S.C., Section 1343.

**Object of the Conspiracy**

22. The object of the conspiracy was for the defendants to enrich themselves and their associates by embezzling funds from the estate of wards and using false and fraudulent pretenses, representations, and promises to obtain and keep money that belonged to multiple incapacitated wards.

**Manner and Means**

23. The defendants used their positions of trust to embezzle, misappropriate, and steal funds belonging to incapacitated wards. Defendant KIJUANA EVANS wrote and obtained unauthorized checks drawn on incapacitated wards' bank accounts. Defendants KIJUANA EVANS and LONNIE GRIFFIN deposited those checks into bank accounts that KIJUANA EVANS and LONNIE GRIFFIN controlled. To obtain the stolen funds after depositing fraudulently obtained checks, KIJUANA EVANS and LONNIE GRIFFIN withdrew the stolen funds in cash, transferred the stolen funds into bank accounts controlled by them, and wrote checks to pay for goods, services, and products for the benefits of the defendants, not for the benefit for the wards. In addition to writing unauthorized checks on wards' accounts, the defendants also withdrew cash directly from the wards' accounts and used those funds for services not provided or for services unrelated to the care of the wards.

24. In furthering the conspiracy and seeking to achieve its purpose, the defendants regularly used and caused the use of interstate wire transmissions

**COUNTS TWO-TEN**
**18 U.S.C. § 1343**
**Wire Fraud**

D-1 KIJUANA EVANS
D-2 LONNIE GRIFFIN

25. Paragraphs 1- 20 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

26. From at least in or around June 2024 through at least in or around March 2025, in the Eastern District of Michigan, and elsewhere, defendant KIJUANA EVANS and LONNIE GRIFFIN, aided and abetted by others known and unknown, did knowingly, willfully, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmit and cause to be transmitted, by means of wire, radio, and television communication, writings, signals, pictures, and sounds in interstate and foreign commerce for the purposes of executing such scheme and artifice.

**PURPOSE OF THE SCHEME AND ARTIFICE TO DEFRAUD**

27. The purpose of the scheme and artifice to defraud was for KIJUANA EVANS and LONNIE GRIFFIN to enrich themselves by embezzling funds and using false

and fraudulent representations, pretenses, and promises to obtain and keep money from the estates of wards to which they was not entitled.

## THE SCHEME AND ARTIFICE TO DEFRAUD

### *Victim M.S.*

28. On or about April 24, 2025, the OCPC appointed Tri-State as successor conservator for M.S.

29. As conservator for M.S., it was Tri-State's responsibility to preserve M.S.'s assets and to expend them for the support, care, and benefit of M.S., and not to expend funds to benefit EVANS and GRIFFIN.

30. From June 2024 through March 2025, KIJUANA EVANS caused six checks to be issued from M.S.'s Citizens bank account, totaling more than $740,000, that were deposited into bank accounts controlled by EVANS and GRIFFIN. Once M.S.'s funds were deposited into accounts controlled by EVANS and GRIFFIN they were converted to their use. EVANS and GRIFFIN transferred the funds to other accounts, withdrew cash, or made purchases that were not for the benefit of M.S.

31. In July of 2025, EVANS and GRIFFIN issued a check from M.S.'s Citizens bank account for more than $87,986 to purchase a Ford Transit van. After the van was purchased, it was titled in EVANS'S name and was used by GRIFFIN's company Key to Life.

32. The funds belonging to M.S., totaling more than $836,000, that were deposited into Tri-State's bank accounts or otherwise used to benefit EVANS and GRIFFIN and were not used for the benefit of M.S.

***Victim M.M.***

33. On or about April 24, 2024, the OCPC appointed Tri-State to succeed Guardian & Associates as conservator for M.M.

34. As conservator for M.M., it was Tri-State's responsibility to preserve M.M.'s assets and to expend them for the support, care, and benefit of M.M., and not to expend funds to benefit EVANS and GRIFFIN.

35. On May 22, 2024, EVANS established a Citizens Bank account for M.M.

36. On September 16, 2024, a law firm issued a $31,803.14 check payable to Tri-State Guardian Services as Conservator for M.M. with the memo "Full and Final Settlement." On September 20, 2024, the same law firm issued another check for $35,650.84 payable to Tri-State Guardian Services as Conservator for M.M. with the memo "Full and Final." The checks were settlement payments for a lawsuit after M.M. was hit by a motor vehicle. The settlement checks were not deposited into M.M.'s Citizens Bank account.

37. On September 23, 2024, the two settlement checks from M.M.'s lawsuit were deposited into Tri-State's Chase Bank account, on which EVANS and

GRIFFIN were the signatories, causing a wire transmission for the purpose of executing their scheme.

38. The funds from the two settlement checks for M.M.'s lawsuit that were deposited into Tri-State's Chase bank account were not used for the benefit of M.M.

***Victim K.P.***

39. On or about October 9, 2024, the OCPC appointed Tri-State as conservator for K.P.

40. As conservator for M.S., it was Tri-State's responsibility to preserve K.P.'s assets and to expend them for the support, care, and benefit of K.P., and not to expend funds to benefit EVANS and GRIFFIN.

41. On November 5, 2024, a $20,408.21 check payable to The Estate of [K.P], Tri-State Guardian Services / Conservator was deposited into Tri-State's Chase bank account, on which EVANS and GRIFFIN were the signatories, causing a wire transmission for the purpose of executing their scheme.

42. The funds from the $20,408.21 check payable to The Estate of [K.P], Tri-State Guardian Services / Conservator that were deposited into Tri-State's Chase bank account were not used for the benefit of K.P.

43. On or about each of the dates listed below, in the Eastern District of Michigan and elsewhere, EVANS and GRIFFIN, aided and abetted by and aiding

and abetting each other and others known and unknown to the grand jury, for the purpose of executing the scheme described above and attempting to do so, by means of materially false and fraudulent pretenses and representations described in the paragraphs identified in previous paragraph, and on or about the following dates, in executing and attempting to execute the scheme to defraud, did cause to be transmitted by means of wire and radio communications in interstate commerce, the below described writings, signs, signals, pictures, and sounds, namely the following payments transmitted in interstate commerce, for the purpose of executing the scheme to defraud, to wit: the transfer of funds from a Tri-State ward's Citizens bank account to an account controlled by EVANS and GRIFFIN, or the deposit of funds belonging to a ward into a bank account controlled by EVANS and GRIFFIN each communication constituting a separate count:

| COUNT | DEFENDANT | APPROXIMATE DATE OF OFFENSE | WIRE TRANSFER |
|---|---|---|---|
| 2 | EVANS and GRIFFIN | June 11, 2024 | $25,000 check drawn on a Citizen's bank account, issued to Key to Life and deposited into a Chase account |

| | | | |
|---|---|---|---|
| 3 | EVANS | July 11, 2024 | $25,000 check drawn on a Citizens account, issued to Tri-State and deposited into a Chase account |
| 4 | EVANS and GRIFFIN | July 12, 2024 | $87,986 check drawn on a Citizens bank account, issued to Mobility Works |
| 5 | EVANS and GRIFFIN | September 23, 2024 | $181,513.53 check drawn on a Citizens bank account, issued to Tri-State and deposited into a Chase account |
| 6 | EVANS and GRIFFIN | March 7, 2025 | $8,000 check drawn on a Citizens bank account, issued to Lonnie Griffin and deposited into a Chase account |
| 7 | EVANS | March 10, 2025 | $8,877 check drawn on a Citizens bank account, issued to Tri-State and deposited into a Comerica account |
| 8 | EVANS and GRIFFIN | March 14, 2025 | $500,000 check drawn on a Citizens banks account, issued to Tri-State and deposited into a Chase account |

| | | | |
|---|---|---|---|
| 9 | EVANS and GRIFFIN | September 23, 2024 | $31,803.14 check issued to MM deposited into a Tri-State Chase account<br>$35,650.84 check issued to MM deposited into a Tri-State Chase account |
| 10 | EVANS and GRIFFIN | November 5, 2024 | $20,408.21 check issued to KP deposited into a Tri-State Chase account |

All in violation of Title 18, United States Code, Sections 1343 and 2.

**COUNT ELEVEN**
18 U.S.C. § 1957
Money Laundering

D-2 LONNIE GRIFFIN

44. On or about MARCH 17, 2025, in the Eastern District of Michigan, defendants EVANS and GRIFFIN, did knowingly engage in a monetary transaction by through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is withdrawal of the sum of $ 250,000 in a monetary instrument from an account at Chase Bank, such property having been derived from a specified unlawful activity,

that is, the funds were embezzled from the Estate of M.S., in violation of Title 18, United States Codes, Sections 1957 and 2.

**COUNT TWELEVE**
18 U.S.C. § 1957
Money Laundering

D-1 KIJUANA EVANS
D-2 LONNIE GRIFFIN

45. On or about October 31, 2024, in the Eastern District of Michigan, defendants EVANS and GRIFFIN, did knowingly engage in a monetary transaction by through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the deposit of the sum of $ 50,000 in a monetary instrument into an account at Chase bank, such property having been derived from a specified unlawful activity, that is, the funds were embezzled from the Estate of M.S., in violation of Title 18, United States Codes, Sections 1957 and 2.

**COUNT THIRTEEN**
18 U.S.C. § 1957
Money Laundering

D-1 KIJUANA EVANS

46. On or about November 1, 2024, in the Eastern District of Michigan, defendant KIJUANA EVANS, did knowingly engage in a monetary transaction by through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the deposit of the sum of $ 45,000 in a monetary instrument into an account at Bank of America,

such property having been derived from a specified unlawful activity, that is, the funds were embezzled from the Estate of M.S., in violation of Title 18, United States Codes, Sections 1957 and 2.

## **FORFEITURE ALLEGATIONS**
18 U.S.C. § 981 and 28 U.S.C. § 2461

47. The allegations contained in this Indictment are realleged and incorporated by reference to allege forfeiture under Title 18, United States Code, Sections 982(a)(1) and 982(b)(2)(F).

48. Upon being convicted of the offenses in violation of Title 18, United States Code, Section 1343 and 1349, the defendants shall forfeit to the United States any property, which constitutes, or is derived from, proceeds traceable to such violations.

49. Upon being convicted of the offenses in violation of Title 18, United States Code, Section 1957, the defendants shall forfeit to the United States any property, real or personal, involved in such offenses or traceable to such offenses.

50. Substitute Assets: If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a. Cannot be located upon the exercise of due diligence;

b. Has been transferred or sold to, or deposited with, a third party;

c. Has been placed beyond the jurisdiction of the Court;

d. Has been substantially diminished in value; or

e. Has been commingled with other property that cannot be subdivided without difficulty;

51. It is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by Title 28, United States Code, Section 2461, to seek to forfeit any other property of the defendant up to the value of the forfeitable property described above.

THIS IS A TRUE BILL.

*s/ Grand Jury Foreperson*
Grand Jury Foreperson

JEROME F. GORGON
United States Attorney

*s/ John K. Neal*
JOHN K. NEAL
Chief, Anti-Corruption Unit

*s/Robert A. Moran*
ROBERT A. MORAN
Assistant United States Attorney

Case: 2:26-cr-20639
Assigned To : Michelson, Laurie J.
Referral Judge: Grand, David R.
Assign. Date : 9/23/2026
Description: INDI USA v SEALED MATTER (JP)

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover** |
|---|---|

**NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.**

| **Companion Case Information** | **Companion Case Number:** 26-cr-20045 |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | **Judge Assigned:** Matthew F. Leitman |
| ☒ **Yes** ☐ **No** | **AUSA's Initials:** R.A.M. |

**Case Title:** USA v. Kijuana Evans et al

**County where offense occurred :** Wayne County and Elsewhere

**Check One:** ☒ **Felony** ☐ **Misdemeanor** ☐ **Petty**

_✓_Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [**Case number:** ]
____Indictment/____Information --- based upon **LCrR 57.10 (d)** ***[Complete Superseding section below]***.

## Superseding Case Information

**Superseding to Case No:** ____________ **Judge:** ____________

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

September 23, 2026
Date

*s/ Robert A. Moran*

Robert A. Moran
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: 313-226-9100
E-Mail address: robert.moran@usdoj.gov

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.